FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LUKE M. HUNTON,
*Petitioner-Appellant*,

v.

STEPHEN SINCLAIR, Superintendent,
*Respondent-Appellee*.

No. 12-35363

D.C. No.
2:06-cv-00054-
FVS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Fred L. Van Sickle, Senior District Judge, Presiding

Argued and Submitted
March 5, 2013—Seattle, Washington

Filed October 11, 2013

Before: Ferdinand F. Fernandez, William A. Fletcher,
and Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Fernandez;
Dissent by Judge W. Fletcher

## SUMMARY[*]

### Habeas Corpus

The panel affirmed the district court's partial dismissal of a 28 U.S.C. § 2254 habeas corpus petition raising a procedurally defaulted claim, because the claim was barred by *Coleman v. Thompson*, 501 U.S. 722 (1991), and not subject to the exception recognized by *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), for instances where trial counsel was ineffective and the claim could not be raised earlier.

Judge W. Fletcher dissented. He would conclude that the equitable rule established in *Martinez* applies when a petitioner procedurally defaulted his claim while acting pro se during his initial collateral review proceedings in state court. He would reverse the district court's decision and remand to allow the court to determine whether petitioner can satisfy the *Martinez* test that would allow an excuse of his procedural default.

### COUNSEL

Matthew Campbell, Assistant Federal Public Defender, Federal Public Defender's Office, Spokane, Washington, for Petitioner-Appellant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

John Joseph Samson (argued), Assistant Attorney General, Corrections Division, Robert M. McKenna, Attorney General, Attorney General's Office, Olympia, Washington, for Respondent-Appellee.

## OPINION

FERNANDEZ, Circuit Judge:

Luke M. Hunton appeals the district court's dismissal of part of his petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254. He asserts that because he is raising a *Brady*[1] claim, he is not bound by the holdings of *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991), that preclude relief when a claim was not exhausted during the post-conviction review process on account of lack of counsel or ineffective assistance of counsel. We affirm.

## BACKGROUND

After Hunton was convicted in the State of Washington of bank robbery and sentenced to imprisonment for life, he appealed and raised a claim that his due process right to discovery had been violated. *See Brady*, 373 U.S. at 87, 83 S. Ct. at 1196–97. The Washington Court of Appeals, in effect, informed him that the claim must be raised in post-conviction relief proceedings. He, without benefit of counsel, did file a post-conviction relief proceeding, but did not raise the *Brady* claim. When review of the claims he did raise was denied, he filed this petition for habeas corpus relief in the

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

district court. The district court ultimately dismissed the *Brady* claim because Hunton had procedurally defaulted in the state courts. He appeals and asserts that he can now raise the claim despite that default. We disagree.

JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 2253. We review the district court's denial of his petition for habeas corpus relief de novo. *See Lopez v. Schriro*, 491 F.3d 1029, 1036 (9th Cir. 2007). By the same token, we review the district court's dismissal of his *Brady* claim due to procedural default de novo. *See Scott v. Schriro*, 567 F.3d 573, 580 (9th Cir. 2009).

DISCUSSION

While Hunton agrees, as he must, that he did procedurally default on his *Brady* claim, he asserts that he may still pursue it because he was deprived of counsel at his post-conviction relief proceeding. However, that pursuit is blocked by a barrier that the Supreme Court clearly recognized over twenty years ago. *See Coleman*, 501 U.S. at 752–53, 111 S. Ct. at 2566. There, the Court declared that the petitioner's assertion that a claim had been defaulted at his post-conviction relief proceeding due to ineffective assistance of counsel at that proceeding must fail because:

> There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. Coleman contends that it was his attorney's error that

> led to the late filing of his state habeas appeal. This error cannot be constitutionally ineffective; therefore Coleman must "bear the risk of attorney error that results in a procedural default."

*Id.* (internal citations omitted). That would end our discussion, but there is a more recent development to consider.

In 2012, the Supreme Court gave further consideration to the general rule. *See Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012). In that case, the Court did create one exception to *Coleman*; it declared that where ineffective assistance of counsel in a post-conviction relief proceeding results in a failure to assert that there was ineffective assistance of counsel in the trial proceedings, the claim would be cognizable. *Id.* at __, 132 S. Ct. at 1320. But, said the Court:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. . . . It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

> In addition, the limited nature of the qualification to *Coleman* adopted here reflects the importance of the right to the effective assistance of trial counsel and Arizona's decision to bar defendants from raising

> ineffective-assistance claims on direct appeal.
> Our holding here addresses only the
> constitutional claims presented in this case,
> where the State barred the defendant from
> raising the claims on direct appeal.

*Id.*; *see also McKinney v. Ryan*, No. 09-99018 at slip op. 16
(9th Cir. Sept. 16, 2013); *Sexton v. Cozner*, 679 F.3d 1150,
1159 (9th Cir. 2012).

Therefore, the question before us is quite uncomplicated.
The Supreme Court has told us that a person cannot raise a
claim of ineffective assistance of post-conviction relief
counsel because he is not entitled to post-conviction relief
counsel, but that is subject to an exception where trial counsel
was ineffective and the claim could not be raised earlier. The
Court made it plain that the exception extended no further.[2]
We recognize that the dissent in *Martinez* was dubious about
the limitation itself, and as much as said that the Court was
being disingenuous and that its decision "insults the reader's
intelligence." *Martinez*, __ U.S. at __, 132 S. Ct. at 1321
(Scalia, J., dissenting); *see also Trevino*, __ U.S. at __,
133 S. Ct. at 1924 (Scalia, J., dissenting). Well, no doubt it
is the prerogative of dissenting Justices of the Supreme Court
to be skeptical about the majority's pronouncements
regarding the limits of its opinions, but it is not for us to treat

---

[2] Since then the Court has added that when, in practice, state courts will
not hear claims of ineffective assistance of trial counsel on direct appeal,
the situation is the same as that when state courts expressly deny
permission to raise those claims on direct appeal. If there is a distinction,
it "is a distinction without a difference." *See Trevino v. Thaler*, __ U.S.
__, __, 133 S. Ct. 1911, 1921, 185 L. Ed. 2d 1044 (2013). Nothing we
decide here is affected by that addition.

those pronouncements as floccinaucities.  We must take the Court at its word.

Yet, it is not surprising to have enterprising lawyers seek to cross the barriers and limitations noted by the Court.  Not surprising, but not sufficient to allow us to move those barriers.  Thus, we need not and will not consider the detail of Hunton's arguments, except to say that a formal deductive logician might be troubled by an argument whose structure is: "X" is an important right and "Y" does not apply to it; "Z" is an important right; therefore, "Y" does not apply to "Z."  But, even if "[t]he life of the law has not been logic,"[3] and even if Hunton has presented a plausible position, we cannot change our decision here.

## CONCLUSION

We remain bound by *Coleman*, which requires that we reject Hunton's attempt to have us remove the obstacle it presents.  If *Coleman*'s revetment is to be torn down, it is not for us to do it.  Rather, we must "follow the case which directly controls, leaving to [the] Court the prerogative of overruling its own decisions."  *Rodriguez De Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S. Ct. 1917, 1921–22, 104 L. Ed. 2d 526 (1989); *see also Agostini v. Felton*, 521 U.S. 203, 237–38, 117 S. Ct. 1997, 2017, 138 L. Ed. 2d 391 (1997).

**AFFIRMED.**

---

[3] Oliver Wendell Holmes, Jr., *The Common Law* 1 (1881).

W. FLETCHER, Circuit Judge, dissenting:

I respectfully dissent.

In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the Supreme Court established an equitable rule under which the failure of a pro se prisoner or of an ineffective counsel to raise in a state court initial collateral review proceeding a claim of ineffective assistance of counsel ("IAC") at trial is "cause" for the state court procedural default, such that the default may be excused. The question in this case is whether the *Martinez* rule applies to ineffectiveness of state court habeas counsel in failing to raise a claim under *Brady v. Maryland*, 373 U.S. 83 (1963). I conclude that it does.

Hunton was convicted in 2002 of second degree robbery in Washington state court and was sentenced to life in prison without parole under that state's three strikes law. With some assistance from counsel, Hunton appealed to the Washington Court of Appeals. Hunton argued on appeal that the prosecution had violated *Brady v. Maryland* by delaying the production of some evidence and failing to disclose other evidence. The Court of Appeals refused to decide Hunton's *Brady* claim on direct appeal. It wrote:

> Mr. Hunton claims that the prosecutor did not timely provide exculpatory evidence including information and materials regarding another individual suspected of the robberies, as well as other exculpatory information. Mr. Hunton may have a point. However, the factual basis for his claim cannot be examined on the record before this court. *See State v. Crane*,

116 Wn.2d 315, 335, 804 P.2d 10 (1991)
(review is limited to the appellate record).

The Washington Supreme Court denied review.

Acting pro se, Hunton filed a personal restraint petition ("PRP") in Washington court. Washington provides counsel only in limited circumstances for prisoners filing PRPs, none of which applied in Hunton's case. Hunton did not raise his *Brady* claim in his PRP. The Washington Court of Appeals denied Hunton's PRP, and the Washington Supreme Court denied review.

Still acting pro se, Hunton then filed a petition for federal habeas under 28 U.S.C. § 2254, in which he raised the *Brady* claim he had unsuccessfully raised in his direct appeal and had failed to raise in his PRP. The district court held that Hunton had procedurally defaulted his *Brady* claim. We granted a certificate of appealability ordering Hunton to address the following questions: (1) whether he had procedurally defaulted his *Brady* claim; (2) whether he had exhausted his *Brady* claim and, if not, whether he should be afforded an opportunity to exhaust in state court; and (3) whether he was entitled to relief on his *Brady* claim. We ordered appointment of counsel.

After briefing by counsel, we remanded to the district court to determine whether Hunton's federal habeas proceeding should be stayed and held in abeyance in order to allow him to exhaust his *Brady* claim. The district court denied stay and abeyance on the ground that Hunton's *Brady* claim had already been procedurally defaulted in state court and there would therefore be no point to a stay and abeyance order. Unbeknownst to the district court, seven days before

the entry of its order the Supreme Court had decided *Martinez*. Hunton moved in the district court for reconsideration based on *Martinez*. The district court denied the motion for reconsideration, but granted a certificate of appealability.

Hunton raises a single question in this appeal: does the equitable rule of *Martinez* apply to a case in which the underlying defaulted claim is a *Brady* claim? For the reasons that follow, I conclude that it does.

The Court held in *Martinez* that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 132 S. Ct. at 1315. Martinez had been convicted in Arizona, which forbids a prisoner to raise a trial-counsel IAC claim on direct appeal. *Id.* at 1313. The Court recognized that because the first opportunity to raise a claim of trial-counsel IAC was on collateral review, "the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Id.* at 1317. The Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320.

A year later, in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), the Court reaffirmed and expanded *Martinez*. Trevino was a Texas prisoner. *Id.* at 1915. Unlike in Arizona, there is no statutory prohibition in Texas against a prisoner raising a trial-counsel IAC claim. *Id.* However, it is "highly unlikely" as a practical matter that appellate counsel will have a "meaningful opportunity" to raise such a claim. *Id.* at 1921. The Court wrote that Texas "appears at first glance to permit . . . the defendant initially to raise a claim of ineffective assistance of trial counsel on direct appeal," but that "in actual operation," the "structure and design of the Texas system . . . make it 'virtually impossible' for an ineffective assistance claim to be presented on direct review." *Id.* at 1915 (citation omitted). The Court therefore found "no significant difference" between Trevino's case and *Martinez*. *Id.* at 1921.

The Court in *Trevino* summarized the four-part test *Martinez* had established to determine whether a federal habeas court may excuse a state court procedural default. "Cause" to excuse the default may be found

> where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral

> review proceeding." *Martinez*, [132 S. Ct. at
> 1318–19, 1320–21].

*Id.* at 1918. (The fourth requirement was relaxed in *Trevino*, as just described.)

The Court has provided several reasons justifying its new equitable rule excusing procedural default. First, "if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims." *Martinez*, 132 S. Ct. at 1316. Where "the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal." *Id.* at 1317.

Second, the Court recognized the importance of having effective legal assistance in bringing an IAC claim. *Id.* at 1317. The Court wrote:

> Claims of ineffective assistance at trial often require investigative work and an understanding of trial strategy. When the issue cannot be raised on direct review, moreover, a prisoner asserting an ineffective-assistance-of-trial-counsel claim in an initial-review collateral proceeding cannot rely on a court opinion or the prior work of an attorney addressing that claim. . . .
>
> The same would be true if the State did not appoint an attorney to assist the prisoner in the initial-review collateral proceeding. The

prisoner, unlearned in the law, may not comply with the State's procedural rules or may misapprehend the substantive details of federal constitutional law. While confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record.

*Id.* at 1317 (internal citations omitted).

Finally, the Court emphasized the significance of the underlying right to effective trial counsel. That right "is a bedrock principle in our justice system." *Id.* at 1317. Effective counsel is essential to a fair trial, and is a "foundation for our adversary system." *Id.* Effective defense counsel tests the prosecution's case, thereby ensuring "that the proceedings serve the function of adjudicating guilt or innocence." *Id.*

Each of these reasons applies with equal force to a defaulted *Brady* claim. First, as in *Martinez* and *Trevino*, where the prisoner was prevented from raising a trial-counsel IAC claim on direct appeal, Hunton was prevented from bringing his *Brady* claim on direct appeal. Almost all *Brady* claims, like almost all trial-counsel IAC claims, rely on evidence outside the trial record. Washington law prevents evidence outside the trial record from being considered on direct appeal. *See State v. McFarland*, 899 P.2d 1251, 1257 (Wash. 1995) (en banc). Hunton sought to raise his *Brady* claim on direct review, and the Washington Court of Appeals refused to hear it. It wrote, "Mr. Hunton claims that the prosecutor did not timely provide exculpatory evidence . . . Mr. Hunton may have a point. However, the factual basis for

his claim cannot be examined on the record before this court." Recognizing the similarity of IAC and *Brady* claims, the court then cited an IAC case in support of its refusal. *See State v. Crane*, 804 P.2d 10, 21 (Wash. 1991) (en banc). The Court wrote in *Martinez* that where "the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal." 132 S. Ct. at 1317. This was true in *Martinez* with respect to a trial-counsel IAC claim. It is equally true here with respect to a *Brady* claim.

Second, just as for a trial-counsel IAC claim, it is important for a *Brady* claim that a prisoner have effective assistance in developing evidence to support his claim. For both trial-counsel IAC and *Brady* claims, much—sometimes all—of the important evidence is outside the trial record. A prisoner acting pro se, or with only the assistance of ineffective collateral review counsel, cannot perform the necessary investigative work to collect and present the evidence in an initial-review collateral proceeding. *See Martinez*, 132 S. Ct. at 1317 (describing the challenges prisoners face in investigating claims and gathering evidence outside the record).

Third, trial-counsel IAC claims and *Brady* claims vindicate bedrock principles of our judicial system. Effective assistance of trial counsel and production of exculpatory evidence by the prosecution are both essential to a fair trial. Both are critical to a criminal trial's essential "function of adjudicating guilt or innocence." *Martinez*, 132 S. Ct. at 1317. As the Court wrote in *Brady*:

> Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: "The United States wins its point whenever justice is done its citizens in the courts." A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not the result of guile, to use the words of the Court of Appeals.

373 U.S. at 87–88 (citations and internal quotation marks omitted). *See also Amadeo v. Zant*, 486 U.S. 214, 222 (1988) (government's intentional suppression of evidence that prevented trial counsel from making jury challenge objection was "cause" to excuse procedural default under *Wainwright v. Sykes*, 433 U.S. 72 (1977)); *Strickler v. Greene*, 527 U.S. 263, 288–89 (1999) (extending *Amadeo* to inadvertent suppression of evidence, citing *Brady*).

The Court in *Martinez* was careful to indicate the limited application of the equitable rule it established. The Court wrote:

The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

In addition, the limited nature of the qualification to *Coleman* [*v. Thompson*, 501 U.S. 722 (1991),] adopted here reflects the importance of the right to the effective assistance of trial counsel and Arizona's decision to bar defendants from raising ineffective-assistance claims on direct appeal. Our holding here addresses only the constitutional claims presented in this case, where the State barred the defendant from raising the claims on direct appeal.

*Martinez*, 132 S. Ct. at 1320 (citations omitted).

According to the majority, this language precludes applying the *Martinez* rule here. I disagree. Nothing in what the Court wrote differentiates a trial-counsel IAC claim from the *Brady* claim at issue here. The Court's first paragraph lists proceedings in which ineffective assistance of counsel does not come within the scope of *Martinez*. Hunton's *Brady* claim was procedurally defaulted by counsel in his initial

collateral review proceeding, not in any of the proceedings listed by the Court. The second paragraph emphasizes "the importance of the right to the effective assistance of trial counsel," as well as "Arizona's decision to bar defendants from raising ineffective-assistance claims on direct appeal." *Id.* The Court has repeatedly made clear the importance of a *Brady* claim. Its language leaves no doubt that a *Brady* claim is just as important as a trial-counsel IAC claim. Further, Hunton was barred from raising his *Brady* claim on direct appeal, just as Martinez and Trevino were barred from raising their trial-counsel IAC claims on direct appeal.

Justice Scalia, dissenting in *Martinez*, anticipated cases like the one now before us. He wrote that "[t]here is not a dime's worth of difference in principle" between trial-counsel IAC claims and *Brady* claims that have been procedurally defaulted by initial collateral review counsel. *Martinez*, 132 S. Ct. at 1321 (Scalia, J., dissenting). I agree.

I conclude that the equitable rule established in *Martinez* applies in a case where a petitioner, acting pro se during his initial collateral review proceedings in state court, failed to raise and thereby procedurally defaulted his *Brady* claim. I would reverse the decision of the district court and remand to allow that court to determine whether Hunton can satisfy the four-part test under *Martinez* that would allow an excuse of his procedural default.